**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

LYNNIE M. VELEZ-ORTIZ,

Plaintiff,

v.

DEL VALLE RODRIGUEZ LAW OFFICES, P.S.C.,

Defendant.

CIVIL NO. 23-1220 (HRV)

**OPINION AND ORDER**

**I.     INTRODUCTION**

The present is an action brought by plaintiff, Lynnie M. Velez-Ortiz (hereinafter "Ms. Velez-Ortiz" or "plaintiff") against defendant, Del Valle Rodriguez Law Offices, P.S.C. (hereinafter "DVRLAW" or "defendant"), alleging violations to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692-1692p (hereinafter "FDCPA"). After receiving leave from the Court, the plaintiff filed an amended class action complaint on November 7, 2023. (Docket No. 36).  About a week later, DVRLAW filed a motion to dismiss the amended complaint under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. (Docket No. 39).  The crux of defendant's argument is that the allegations in the amended complaint are factually insufficient to establish Article III standing.

On December 12, 2023, plaintiff filed a response in opposition to the motion to dismiss. (Docket No. 44).  In it, Ms. Velez-Ortiz maintains that the amended complaint

1

contains sufficient allegations of damages and an injury in fact to survive the defendant's motion to dismiss. (*Id.*)  For the reason elaborated below, the motion to dismiss is hereby DENIED.

## II.    FACTUAL[1] AND PROCEDURAL BACKGROUND

The amended complaint alleges that Ms. Velez-Ortiz, who is a "consumer" as that term is defined by the FDCPA, accumulated a debt with Banco Popular de Puerto Rico ("Banco Popular") in the form of a personal loan, sometime before May 8, 2022.[2] (Amended Complaint, Docket No. 36 at 3). It is also alleged that sometime prior to that date, Banco Popular retained the services of DVRLAW, a professional services corporation regularly engaged in the business of collecting or attempting to collect debts on behalf of others.  That makes DVRLAW, a "debt collector" under the FDCPA according to the allegations in the amended complaint.

In a letter sent by mail to Ms. Velez-Ortiz, DVRLAW sought to collect on the debt allegedly owed to Banco Popular. (Docket No. 37, Exhibit A).  The letter, plaintiff alleges, meets the definition of an "initial communication" under the FDCPA, and failed to

---

[1] For purposes of the instant opinion and order, I outline the facts of the case directly from the amended complaint accepting them as true. S*ee Katz v. Pershing, LLC.*, 672 F.3d 64, 70 (1st Cir. 2012).

[2] The parties dispute the operative date of this initial communication. Plaintiff maintains that the date is May 8, 2022, while defendant submits that the dates is August 5, 2022. The controversy seems to stem from the way date abbreviations are formatted in both English and Spanish.  The letter is dated 08/05/22. *See* Exhibit A, Docket No. 1-4.  In the English language, the month goes first; thus, defendant states that the letter was sent on August 5, 2022.  On the other hand, plaintiff insists that because the body of the letter is written in the Spanish language, the date should be read using the Spanish abbreviation format, in which case the day goes first, and the month goes second. Hence, plaintiff's contention that the initial communication was sent on May 8, 2022. At the motion hearing, and to my dismay, I was unable to get a clarification on this issue.  The parties remained firm in their positions. Regardless, I need not decide this issue at this time.

2

disclose necessary information as required by 15 U.S.C. § 1692g(a). Among other things, the initial communication should have disclosed to plaintiff, in clearly understood language, that she had a right to dispute in writing the validity of the debt within 30 days of receipt of the initial communication. (Count I). (Docket No. 36 at 7-9). Additionally, plaintiff contends that defendant DVRLAW failed to provide readily understandable information mandated by Regulation F (12 C.F.R. § 1006.34(c)) in the initial communication, such as "the itemization date" of the debt, "the amount of the debt at the itemization date", and "an itemization of the current amount of the debt reflecting interests, fees, payments, and credits since the itemization date." (Count II). (Docket No. 36 at 10). Count III of the amended complaint alleges a violation to 15 U.S.C. § 1692e in that DVRLAW failed to disclose in the initial communication—as well as in a subsequent communication letter dated March 12, 2023 (Exhibit B)—that it was acting as a debt collector. (Docket No. 36 at 11-12; Docket No. 37). In sum, plaintiff's amended complaint accuses defendant of engaging in unlawful and deceptive debt-collection practices. She brings the present action on behalf of herself and a class of similarly situated persons.[3]

With respect to damages, the amended complaint alleges that Ms. Velez-Ortiz suffered both tangible and intangible injuries due to the alleged unlawful debt-collection

---

[3] The amended complaint seeks, pursuant to Fed. R. Civ. P. 23, to name plaintiff as the representative of a class whose members supposedly exceed 10,000 natural persons with addresses in Puerto Rico that received letters similar to the ones submitted in this case as Exhibits A and B, thus making joinder impracticable. There are, according to plaintiff, common questions of law and fact that predominate over any question affecting individual class members particularly in what has to do with whether the letters (initial communication and subsequent communication) are form letters and whether they violate the FDCPA. It is also alleged that the informational injuries suffered by plaintiff are typical of all class members and that plaintiff can fairly and adequately represent all members of the class inasmuch as she has retained the service of counsel experienced in consumer credit and debt-collection abuse cases.

practices of DVRLAW.  She allegedly required medical care and had to incur in out-of-pocket expenses.  Ms. Velez-Torres avers that she had to use more than $600 of her health insurance pharmacy allotment and had to take sick days from work.  She also claims as damages suffered, that she incurred in late fees and interests for other obligations that she failed to pay because she separated funds to pay the debt at issue here while operating under the incorrect belief that she had to pay without disputing the debt's validity.  Plaintiff also contends that she suffered intangible damages.  For instance, she had to inform her employer that her wages would likely be subject to garnishment, something that she maintains tarnished her reputation.  Plaintiff alleges in general that she suffered stress, anxiety, frustration, anger, confusion and that her privacy was invaded.

      The original complaint was filed on May 4, 2023. (Docket No. 1). As its first responsive pleading, defendant moved to dismiss the complaint for lack of subject matter jurisdiction on September 20, 2023. (Docket No. 17).  After requesting and receiving an extension of time to respond (Docket Nos. 19 and 20), plaintiff moved the court to file an amended complaint. (Docket No. 24).  The case was then assigned to the Honorable Bruce J. McGiverin, United States Magistrate Judge, for all further proceedings including the entry of judgment.  (Docket Nos. 27 and 29).  Judge McGiverin denied the defendant a request for extension of time to respond to the plaintiff's motion for leave to file an amended complaint (Docket No. 28), granted the plaintiff's motion for leave to file (Docket No. 32), and mooted the motion to dismiss in light of the amended complaint. (Docket No. 33). However, the Court indicated that to the extent they were still applicable, defendant may raise the same arguments in a renewed motion to dismiss. (*Id.*)

The case was then reassigned to me. (Docket No. 35). DVRLAW accepted Judge McGiverin's invitation and filed its motion to dismiss the amended complaint on November 14, 2023. (Docket No. 39). Plaintiff opposed on December 13, 2023. (Docket No. 44). The Court heard oral argument from the parties on January 18, 2024. (Docket No. 48).

### III.   APPLICABLE LAW AND DISCUSSION

#### A. *Motion to Dismiss Standard*

A motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is the proper vehicle to challenge the existence of Article III standing. *See Quintero v. Metro Santurce, Inc.*, No. 20-01075-WGY, 2021 U.S. Dist. LEXIS 237071 at *7, 2021 WL 5855752 (D.P.R. Dec. 9, 2021)(citing *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 362 (1st Cir. 2001)). A Rule 12(b)(1) motion is reviewed under a standard similar to that used to analyze motions to dismiss for failure to state a claim under Fed. R. Civ. P 12(b)(6). *Katz v. Pershing, LLC.*, 672 F.3d at 70-71; *see also Negron-Gaztambide v. Hernandez-Torres*, 35 F.3d 25, 27 (1st Cir. 1994). The same way a plaintiff bears the burden under Rule 12(b)(6) to plead sufficient facts to plausibly allege a viable cause of action, a plaintiff must similarly plead sufficient facts to meet his or her burden to demonstrate standing. *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730 (1st Cir. 2016)(cleaned up).

The Supreme Court has held that since "standing is not dispense in gross" plaintiff "must demonstrate standing for each claim [she] brings and each form of relief [she] seeks." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208, 210 L Ed. 2d 568 (2021). At this stage, district courts "must credit the plaintiff's well-pleaded factual allegations and

draw all reasonable inferences in the plaintiff's favor. *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010).  However, "[n]either conclusory assertions nor unfounded speculation can supply the necessary heft." *Hochendoner,* 823 F.3d at 731.

### B. Article III Standing

Federal Courts are courts of limited jurisdiction. Article III of the Constitution limits "the judicial power" to "Cases" and "Controversies." U.S. Const. art III, §2, cl. 1.  In *Spokeo*, the Supreme Court noted that "[s]tanding to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  To demonstrate standing, a plaintiff must show these three things: "(i) that [she] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S.Ct. at 2203 (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

### C. Analysis

The way I read the defendant's motion to dismiss, the focus of its argument is the first prong of the standing test, namely, the "injury in fact" requirement, and whether said injury is concrete and particular.  The defendant does not dispute that if the plaintiff's alleged harm is concrete enough to meet the injury in fact prong, the harm will be traceable to DVRLAW and redressable by a favorable judgment of the court under the FDCPA's statutory scheme.  Accordingly, I will address only whether the amended complaint has pleaded enough facts showing a concrete and particular injury to survive dismissal.  *Anvar v. Tanner*, 549 F. Supp. 3d 235, 240 (D.R.I. 2021)(addressing only

injury-in-fact requirement where the parties did not dispute traceability and redressability.)

DVRLAW argues in its motion to dismiss that the amended complaint conveniently added more specific facts and allegations about the damages suffered by plaintiff to cure the original assertion that she lacked standing. (Docket No. 39 at 2). It maintains, however, that the amended complaint still fails to establish standing since plaintiff "did not suffer specific damages." (*Id.* at 3). For instance, DVRLAW advances that since plaintiff never made a single payment toward the debt owed, any shortcomings in the disclosures to be provided to the consumer "never became real." (*Id.*). DVRLAW labels plaintiff's allegations that she had to invest significant time to investigate matters included in the initial communication as "obviously frivolous." (*Id.*). If she was confused by the letter, defendant asseverates, plaintiff should have paid some sum of money or contacted DVRLAW. (*Id.* at 3-4). Defendant similarly disputes the plausibility of the allegation that plaintiff required and had to procure medical treatment because of the defendant's debt-collection efforts. (*Id.* at 4). Defendant characterizes as self-inflicted the claim of reputational damage. (*Id.*). Lastly, DVRLAW faults plaintiff for alleging invasion of privacy as an injury because there was no other address to send the communication but to her home address. (*Id.* at 5). In sum, defendant contends that the amended complaint merely alleges statutory violations to the FDCPA.

In response, Ms. Velez-Ortiz submits that the amended complaint pleaded both tangible and intangible injuries that are sufficiently concrete to constitute an injury in fact for Article III standing purposes. (Docket No. 44 at 2). Plaintiff specifically asserts that the damages which flow from defendant's material violations to the FDCPA confer

7

standing because she has suffered at least five (5) separate forms of tangible injuries, as well as three (3) types of intangible injuries of the kind and nature that have been recognized as falling within the ambit of the interests that Congress sought to protect. (*Id.*). For example, with respect to tangible harm, Plaintiff lists the following injuries as resulting from the defendant's alleged violations: out of pocket expenses related to co-payments disbursed during medical appointment; $600 assessed against the pharmacy coverage of her health insurance; five (5) sick days taken off from work; at least three (3) visits to her doctor; two (2) additional doctor-ordered leaves of absence; and the activation of a medical condition that prior to the facts of this case had been in remission. (*Id.*). With respect to intangible injuries, plaintiff claims that the allegedly unlawful collection efforts of DVRLAW caused her reputational and informational harm, as well as intrusion into her privacy and seclusion. (*Id.*).

To be sure, a concrete injury in fact is one that is "real, not abstract.'" *TransUnion*, 141 S. Ct. at 2204 (*quoting Spokeo, Inc. v. Robins*, 578 U.S. at 340). Said differently, it is the "invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. at 560-61. A plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Spokeo, Inc. v. Robins*, 578 U.S. at 341. Examples of injuries that have been determined to satisfy concreteness are traditional tangible harms such as physical and monetary harms. *Webb v. Injured Workers Pharm.*, LLC, 72 4th 365, 372 (1st Cir. 2023)(citations and marks omitted). "Intangible harms can also be concrete, including when they 'are injuries with a close relationship to harms traditionally recognized as

providing a basis for lawsuits in American courts,' such as 'reputational harms, disclosure of private information, and intrusion upon seclusion.'" *Id.* (quoting *TransUnion*, 141 S. Ct. at 2204). Both "history and tradition" as well as "the judgment of Congress" are to be considered in determining whether an intangible harm confers standing. *Rowan v. Pierce*, No. 20-1648 (RAM); 2023 U.S. Dist. LEXIS 155697 at *17 (D.P.R. Sept. 1, 2023)(citing *TransUnion,* 141 S. Ct. at 2204-05 and *Spokeo*, 578 U.S. at 340)).

In applying the above principles, and considering that the matter is at the pre-discovery pleading stage, I find that plaintiff's amended complaint has sufficiently pleaded Article III standing. The allegations in the amended complaint are "sufficient to meet the minimal plausibility standard" to defeat a motion to dismiss. *Dicroce v. McNeil Nutritionalists, LLC.*, 82 4th 35, 39 (1st Cir. 2023)(*citing In re Evenflo Co., Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, 54 F.4th 28, 35 (1st Cir. 2022)). Ms. Velez-Ortiz has alleged that she incurred in out-of-pocket expenses and other forms of economic harm. Out-of-pocket costs is the "quintessential injury in fact." *Weiner v. MIB Grp., Inc.*, 86 4th 76, 86 (1st Cir. 2023)(citations omitted); *see also Gustavesen v. Alcon Labÿs, Inc.*, 903 F.3d 1, 7 (1st Cir. 2018)(finding that "out of-pocket loss of money" is a particularized injury for standing purposes).

The amended complaint specifically alleges out-of-pocket expenses in the form of more than $100 in copayments not reimbursed by her health insurance plan for three visits to her physician. These Doctor's visits were, according to the amended complaint, precipitated by a medical condition previously in remission that got reactivated allegedly because of Defendant's unlawful communication. She thus claims physical harm.

Further, plaintiff's medication allotment in her health insurance plan has been taxed more than $600, and she has had to take five sick days, according to the averments in the amended complaint. These tangible forms of harm, the caselaw recognizes, are injuries in fact establishing Article III standing, particularly the monetary harm. This conclusion is consistent with recent First Circuit Article III standing decisions finding out-of-pocket loss to be concrete injuries. *Wiener v. MIB Grp., Inc.*, 86 4th at 85-87; *Webb v. Injured Workers Pharm.*, LLC, 72 4th at 372; *In re Evenflo Co., Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, 54 F.4th at 35.

I am also persuaded by the reasoning of the Seventh Circuit's recent decision in *Mack v. Resurgent Cap. Servs., L.P.*, 70 F.4th 395 (7th Cir. 2023). In *Mack*, the plaintiff incurred in a credit-card debt as to which defendants sought to collect. *Id.* at 399. Frontline Asset Strategies, LLC ("Frontline"), a company engaged by defendant Resurgent Capital Services, L.P. ("Resurgent"), sent plaintiff a letter that stated, among other things, that Mack had 30 days to dispute the validity of the debt. *Id.* Although plaintiff was aware of her credit card debt, she was uncertain as to the amount that she was being requested to pay; the amount seemed high to her. *Id.* Within the 30-days, Mack took several steps to request validation of the debt. *Id.* She researched her options using her cellphone, drafted a validation request by hand, traveled to her local library to type and print the letter since she did not have a computer or printer at home, and then went to the post office where she paid a total of $10.15 to send the letter via certified mail. *Id.*

Mack did not receive the validation that she requested; instead, she received a second letter, this time from Resurgent, that contained similar language as the first letter,

suggesting that she had 30 days to dispute the validity of the debt. *Id.* at 400. Mack was confused and alarmed by this second letter. *Id.* More than 30 days had elapsed since she requested validation from Frontline, and she was being told in the second letter that she needed to request validation again from a different company. *Id.* This confusion caused Mack to once again take the same steps to draft, type, print and mail a second validation request, with postage totaling $3.95 this time. *Id.* These trips to the library and post office were not easy for Mack, who was at the time unemployed and cared for family members with serious medical conditions. *Id.*

Three months after sending her second validation request—and after not receiving any response—Mack filed a class action suit against defendants alleging violations to the FDCPA. *Id.* at 401. The defendants moved to dismiss under Rule 12(b)(1) for lack of standing. *Id.* at 402. In general, defendants argued that plaintiff had only pled confusion by the letters she received, and that confusion was insufficient to establish concrete harm. The district court held that Mack had failed to allege an injury in fact. Relevantly, the district court found that the time, effort and out-of-pocket costs expended in sending a second validation of debt request, "did not rise to the level of detriment required for standing in FDCPA cases." *Id.* According to the lower court, the Resurgent letter basically gave plaintiff another opportunity to dispute the debt and did not adversely affect any interest protected by the FDCPA. *Id.* A different outcome would have resulted if Mack had "taken some action related to her debt management choices." *Id.* (quoting *Mack v. Resurgent Capital Servs., L.P.*, 2021 U.S. Dist. LEXIS 165881, 2021 WL 3901747, *3 (D.D. Ill. Sept 1, 2021)).

On appeal, the Seventh Circuit disagreed. First, the appellate court noted that a complaint need not contain "'detailed factual allegations' but '[f]actual allegations must be enough to raise a right to relief above the speculative level[.]'" *Id.* at 405 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Second, the court held the allegations in the complaint were sufficient in that plaintiff pleaded that she had to incur in additional out-of-pocket expenses to re-dispute the debt after the defendants send her a communication that would confuse any debtor in believing that the initial dispute was not valid. *Id.* The postage fee of $3.95 to re-dispute the debt was found to be sufficiently pled "harm to an underlying concrete interest that Congress sought to protect." *Id.* at 406 (citing *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019)). In other words, "[m]oney damages caused by misleading communications from the debt collector are certainly included in the sphere of interests that Congress sought to protect."[4] *Id.* It mattered not "that **the dollar cost was modest**," a concrete injury was sufficiently alleged because plaintiff was "misled to her financial detriment." *Id.* at 407. Plaintiff met the remaining prongs of the standing test

---

[4] In summarizing the interests that Congress sought to protect in passing the FDCPA, the Seventh Circuit stated:

> Congress passed the FDCPA to curb "the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Such practices 'contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.' In order to 'eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses, Congress placed certain obligations on debt collectors and granted rights to consumers.

*Mack*, 70 F.4th at 403-04 (quoting 15 U.S.C. §§ 1692(a) and (e)).

12

as well, namely particularity, traceability and redressability. *Id.* at 407-408. The judgment of the district court dismissing the complaint was reversed. *Id.* at 408.

Like the plaintiff in *Mack*, Ms. Velez-Ortiz' amended complaint has sufficiently alleged economic harm and out-of-pocket expenses, which is enough to establish a concrete and particular injury, notwithstanding how modest the dollar cost may be.

The defendant's reliance in cases from other circuits is misplaced. DVRLAW cites two Seventh Circuit cases, and one Eighth Circuit opinion in support of its lack of standing argument. *See, e.g., Choice v. Kohn Law Firm*, 77 F.4th 636 (7th Cir. 2023); *Pierre v. Midland Credit Mgmt., Inc.*, 36 F.4th 728 (7th Cir. 2022); *Bassett v. Credit Bureau Servs.*, 60 F.4th 1132 (8th Cir. 2023). These cases are distinguishable.

In *Choice*, the plaintiff alleged that he suffered two concrete injuries: "he hired an attorney to defend him in the collection action and paid an appearance fee, and he lost sleep due to concern about having to pay statutory attorney's fees." 77 F.4th at 639. Choice admitted in discovery that he did not suffer any actual damages. *Id.* at 638. And Seventh Circuit precedent foreclosed the alleged harms (hiring a lawyer to litigate and experiencing confusion and loss of sleep) as being sufficient to establish standing. The appellate court thus affirmed the judgment dismissing Choice's complaint for lack of subject matter jurisdiction.

Similarly, in *Pierre*, the Seventh Circuit held that plaintiff lacked standing because the letter that she received from defendants, even if deceptive, at most put her at risk of real harm. In response to the letter, all appellant did was to call the defendant to dispute the debt and contact a lawyer for legal advice. These actions were found not to be "legally cognizable harms." *Id.* at 939. Likewise, her psychological states of confusion and

emotional distress, standing alone, were not concrete injuries sufficient to confer standing in the FDCPA context. *Id*. It is noteworthy that *Pierre* was not a unanimous decision. A dissenting judge would have found that plaintiff met standing requirements.

Lastly, in *Bassett*, the plaintiff received a letter from the defendant demanding payment of interest on her debts without a judgment. *Bassett v. Credit Bureau Servs.*, 60 F.4th at 1136. However, plaintiff never paid any part of the interest or principal. *Id*. As for intangible harm, the plaintiff analogized her alleged injury to the type of harm recognized in the common-law causes of action of fraudulent misrepresentation and conversion. *Id*. But the Eight Circuit held that she had not shown any harm bearing a close relationship to the type of injury traditionally recognized "as providing a basis for a lawsuit in American courts." *Id*. (quoting *TransUnion*, 141 S.Ct. at 2204). The appellant was not seeking to remedy any harm to herself but instead was merely seeking to ensure defendant's compliance with regulatory law. *Id*. at 1137.

In this case, unlike the plaintiffs in *Choice*, *Pierre* and *Bassett*, Ms. Velez-Ortiz has specifically alleged a tangible harm in the form of monetary damages and physical injury.

Moreover, in addition to tangible harm, the amended complaint alleges several forms of intangible injuries: informational injury, reputational harm, and invasion of privacy/intrusion into seclusion. These have been recognized by the caselaw as concrete enough injuries to confer Article III standing. *See TransUnion LLC v. Ramirez*, 141 S. Ct. at 2204; *see also Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1192-93 (10th Cir. 2021)(holding that intrusion into seclusion is recognized as an intangible harm providing a basis for a lawsuit in American courts thus establishing injury in fact for standing

purposes.) Therefore, at this stage, the allegations in the amended complaint are sufficient to survive a motion to dismiss because they meet the minimal plausibility standard, and because the Court must credit the allegations as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g., Bragg v. Trueaccord Corp.*, No. 21-cv-05089-VMC-RGV, 2023 WL 8723995; 2023 U.S. Dist. LEXIS 195574 (N.D. Ga., Oct. 31, 2023)(recommending denial of motion to dismiss); *Clay v. Equityexperts.org, LLC.*, No. 21-CV-02540-LMM-JEM, 2024 U.S. Dist. LEXIS 3678 at *19-20 (N.D. Ga., Jan. 8, 2024)(recommending denial of motion for summary judgment).

## IV.  CONCLUSION

In view of the above, the defendant's motion to dismiss is DENIED. At this stage of the proceedings, and given the non-onerous pleading standard, I must find that the allegations in the amended complaint are sufficient to plead Article III standing. *See Rivera v. JP Morgan Chase Bank, N.A.*, No. 21ocv-00225 (TNM), 2023 WL 6276648; 2023 U.S. Dist. LEXIS 171974 at *8 (D.C.D., Sept. 26, 2023)("At this preliminary stage, and taking all allegations in the Complaint as true, Ms. Rivera has plausibly alleged a concrete injury-in-fact . . . including [tangible harm such as] out-of-pocket costs . . . and intangible harms such as emotional distress.")

Notwithstanding, I note that this is a close case and plaintiff should not take comfort in my ruling. It may very well be that once discovery has been conducted, and through a properly supported motion for summary judgment, the alleged concrete injuries-in-fact are not so. The undeniable fact is that following *TransUnion*, the state of the law in this area is in flux, with the overwhelming majority of cases finding lack of

standing with allegations of harm similar to the ones asserted by Ms. Velez-Ortiz. But at this time, I find that she has done enough and lives to fight another day.

**IT IS SO ORDERED**

In San Juan, Puerto Rico this 25th of January, 2024.

S/Héctor L. Ramos-Vega
HÉCTOR L. RAMOS-VEGA
UNITED STATES MAGISTRATE JUDGE
